# CASES DECIDED

IN THE

# Supreme Court of Georgia.

## OCTOBER TERM, 1892.

### DANIELS v. THE STATE.

1. A wharf bounded on the north by a river, on the south by a railroad embankment and trestle, and on the east and west, respectively, by piles of lumber placed thereon, not for the purpose of forming an enclosure but merely for the convenience of the occupants of the wharf, is not "enclosed," although it and other wharf property may be inside of a tract surrounded in consecutive order by a river, certain salt sheds, a canal, railroad trestles and a fence, and although this tract, including the wharves and other realty, may be inside of a still larger tract surrounded as to two sides by fences and as to the other two by a river and canal. Consequently it is not, under the act of 1883 making it a misdemeanor to "willfully enter, go upon or pass over any field, orchard, garden or other *enclosed* or cultivated land of another, after being personally forbidden so to do by the owner, or person entitled to the possession for the time being, or authorized agent thereof," an indictable offence to willfully enter or go upon such wharf after being so forbidden, and a conviction thereof is contrary to law.
2. Whether or not such wharf is "land" in the sense in which this word is used in the act mentioned: *Quære?*

October 8, 1892.                                    *Judgment reversed.*

Before Judge MacDONELL. City court of Savannah. July term, 1892.

Having waived trial by jury, Daniels was tried by the judge upon an accusation charging him with the offence of trespass, in willfully going upon the enclosed land of the Georgia Lumber Company after being personally forbidden to do so by the president and agent of that

company. He was found guilty; his motion for a new trial was overruled, and he excepted. In addition to the general grounds, it was contended that the court erred in holding that the wharf upon which the trespass was alleged to have been committed, was enclosed as by the statute contemplated.

The testimony showed: The Central Railroad & Banking Co. owns a tract of lowlands and marshes in Savannah, upon a portion of which are built its wharves and freight sheds, as well as a number of lumber wharves west of the steamship wharves. One of these lumber wharves is occupied by the Georgia Lumber Company, being the wharf in question, under lease from the Central Railroad, and was so occupied at the time of the commission of the alleged offence. The entire tract of lowlands is bounded north by the Savannah river, east by the Ogeechee canal over which is a bridge guarded by agents of the C. R. R., by which means only it can be approached from the east in order to get to the wharves, south by a fence, the northern boundaries of truck farms, and west by a fence between it and the Vale Royal Manufacturing Co. So much of this tract as constitutes wharves allotted to lumber men (five sections in number) is bounded or enclosed north by the river, east by salt sheds of the C. R. R. and canal and trestle, south by trestle of the C. R. R., and west by the fence of the Vale Royal Manufacturing Co. The particular wharf in question is bounded or enclosed north by the river, east and west by piles of lumber lying on the wharf, and south by the embankment and trestle of the C. R. R. The lumber constituting the east and west boundaries was placed upon the wharf, not for the purpose of forming an enclosure, but merely for the convenience of the lumber company, but the lumber pile did form an enclosure on the east and west. These wharves are built upon piling about as high as the

trestle, ten or twelve feet above the level of the river at low water. Defendant is a duly licensed stevedore of Savannah, and has been doing business as such for a long period. He entered into contract with a schooner about May 2, 1892, to load her with lumber from the wharf occupied by the Georgia Lumber Company, to whom the schooner had been sent by her char- terers for a cargo of lumber, and at which wharf she was at the time of the alleged offence. She had been given a berth there and was rightfully moored there for the purpose of taking on her cargo. In pursuance of the contract defendant with his gang went upon the wharf to load the cargo in the vessel, when he was notified he should get off the wharf and not again go upon it or over it, under penalty of prosecution. Pre- viously to that time he had been notified repeatedly and personally that he must not go upon this wharf by said company. He refused to leave the wharf, saying he would not go off until put off, whereupon he was ar- rested, tried, etc. In order to load the cargo he had to go upon this wharf, and he was there for the purpose of loading this vessel. The schooner was there rightfully and by consent and authority of agents of charterers. There was no agreement between the schooner and her charterers or agents as to stevedoring. Defendant showed, by three witnesses, that where the charter party was silent as to stevedoring, or in the absence of any agreement to the contrary, it was the master's right and privilege to nominate and employ such stevedore as he chose. One witness for the State testified that his experience was, that where the charter party was silent as to stevedoring, the master and shipper had always agreed upon a stevedore, and that the shipper had the right to veto the master's appointment; that defendant was at the present time loading a vessel for him and he had never found any fault with him as a stevedore,

although some merchants objected to him and would not permit him on their wharves or to load their lumber; and that the custom of the port gave the shippers the right to object to any stevedore for cause. The evidence further showed, that before the master engaged defendant to load his cargo, he was told by defendant that the Georgia Lumber Company had prohibited him from coming on their wharf, or loading any vessel at their docks, and that he would have trouble with them; that the master told him that if he would make a written contract to load, he (the master) would see that he did it; that after this the master engaged defendant, and when the master reported to the Georgia Lumber Company the arrival of his vessel, he was informed that defendant would not be permitted to load the lumber and would not be allowed on its dock, and that he (the master) could get any other competent stevedore in the port, and that if there was any difference in the price of loading the Georgia Lumber Company would pay it.

SEABROOK & MORGAN, for plaintiff in error.

W. W. FRASER, solicitor-general, and LESTER & RAVENEL, *contra*.